**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |
|---|---|
| **TERESA SARACINI**<br>**226 W Bourne Way**<br>**Millsboro, Delaware 19966**<br>Plaintiff,<br><br>v.<br><br>**DIXIE SHEET METAL WORKS, INC**<br>**111 Gordon Road**<br>**Falls Church, Virginia 22046**<br><br><br>Defendant.<br><br>**Serve Registered Agent:**<br>**Robert V. Withers**<br>**111 Gordon Road**<br>**Falls Church, Virginia 22046** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **Civil Action No.:** 1:18-cv-00888<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

1.     Plaintiff, Teresa Saracini, (herein "Ms. Saracini" or "Plaintiff Saracini") brings this action against the Defendant, Dixie Sheet Metal Works, Inc. (herein "Dixie" or "Defendant") on the basis of gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1964) ("Title VII").

**JURISDICTION AND VENUE**

2.   This Court has subject matter jurisdiction over Ms. Saracini's Title VII action pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343(a)(4).

3.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the unlawful practices committed by the Defendant described herein arose in the Eastern District of

Virginia; the Defendant operates facilities located in this District; and the employment documents and records relevant to the prohibited practices are, upon information and belief, maintained and administered at the Defendant's offices located in this District.

## PARTIES

4. Ms. Saracini is an adult, domiciled in Millsboro, Delaware. At all times relevant to this Complaint, Ms. Saracini resided in Fairfax, Virginia. From January 2012, until December 28, 2016, Ms. Saracini worked as and accounting and office manager in Falls Church, Virginia.

5. At all times relevant to this Complaint, Ms. Saracini was an "employee" of the Defendant within the meaning of Title VII, 42 U.S.C. § 2000e(f). Defendant, Dixie, is a Virginia entity conducting business in the Commonwealth of Virginia. Upon information and belief, the Defendant, at all times relevant to the complaint, employed 15 or more employees.

6. At all times relevant to this Complaint, the Defendant was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

## ADMINISTRATIVE EXHAUSTION

7. Ms. Saracini filed a Charge of Discrimination (EEOC No. 570-2018-00179) with the Equal Employment Opportunity Commission's Washington Field Office and received a notice of Right to Sue on April 18, 2018.

## STATEMENT OF FACTS

8. Plaintiff re-alleges paragraphs 1-7 and incorporates them fully herein.

9. Ms. Saracini began working for Dixie in January 2012. She started off as an accounting manager earning $72,800.00 and quickly moved on to office management.

10. During her tenure, Ms. Saracini job duties and responsibilities included but were not limited to all accounting functions, human resources, customer vendor management, contract management, computer and network management, and overall office manager.

11. From the onset of her employment, however, Ms. Saracini noticed that sexist comments and behavior ran rampant in the office among her coworkers. For example, management often used harsh expletives and had pictures of half-naked women displayed in the workspace. Another example is an incident where Mr. Allen Withers, Ms. Saracini's supervisor, Ms. Saracini, and another female from a different organization participated in a teleconference. When the teleconference ended, Mr. Withers hung up and called the individual a cunt.

12. The inappropriate comments and obvious sexist attitude unsettled Ms. Saracini but she was afraid to complain for fear of losing her job. Instead, she continued to perform her job to the best of her ability and decided to "keep her head down".

13. Mr. Withers often commended Ms. Saracini for her job performance.

14. Eventually, Ms. Saracini complained to Robert and Allen Withers about the offensive language and the offensive pictures but nothing was done.

15. In September 2015, Dixie hired John Coppock as the Field Service Manager.

16. As a Field Service Manager, Mr. Coppock's job duties and responsibilities involved project oversight.

17. John Coppock's starting salary was $106,000.

18. Dixie gave Mr. Coppock two weeks of vacation upon his hire as opposed to Ms. Saracini whom management only gave one week of vacation after one year of service .

3

19. From the onset of Mr. Coppock's employment, it was obvious that he had very little regard for women and that he held a discriminatory animus towards women. He often berated her and embarrassed her in front of others.  He blatantly questioned her integrity and often expressed disbelief that Dixie trusted her.

20. Upon information and belief, Ms. Saracini did not observe Mr Coppock treat any male employees the same way he treated her.

21. In August of 2016, Dixie gave all the men in the company a two-dollar raise and only gave Ms. Saracini a one dollar and twenty-five cent raise.

22.   That same month, Ms. Saracini informed Allen Withers that the wage disparity between the men and women at Dixie was blatant discrimination.  Management did not look favorably upon her complaint.

23. Dixie had very few job perks and/or incentives.   However, management occasionally spoke of offering stock to its employees as a benefit of employment.

24. In early November 2016, Ms. Saracini expressed her interest in acquiring stock in Dixie.   Allen Withers, however, disdainfully dismissed her interest and denied her request.

25. In or around November 2016, Mr. Coppock displayed physical violence towards Ms. Saracini.   Specifically, during a discussion with Ms. Saracini regarding a new software package update, Ms. Saracini informed Mr. Coppock that a software update he wanted to implement would take a while to put in place.   Mr. Coppock was angry because he had wanted the software package to be updated immediately.   When Mr. Coppock realized Ms. Saracini was not going to immediately grant his request he lunged

at her. Frightened for her safety, Ms. Saracini retreated back to her office. She reported Mr. Coppock's frightening actions to Allen Withers. Mr. Withers, however, did nothing.

26.  On or about November 2, 2016, Ms. Saracini met with Allen Withers to discuss the incident. Ms. Saracini reiterated that she did not feel safe around Mr. Coppoock. Ms. Saracini told Mr. Withers that she could only remain with the company if he corrected Mr. Coppock's behavior. She requested that Mr. Withers step in and do something. But still, he did nothing. And rather than acknowledge Ms. Saracini's fear of Mr. Coppock, Mr. Withers informed her that Mr. Coppock had acquired ten (10) percent of the company through the purchase of stock. Clearly, Mr. Wither's actions were calculated to force a resignation from Ms. Saracini.

27. A couple of weeks later, Ms. Saracini once again complained to Allen Withers about Mr. Coppock's animus towards her. Once again, Mr. Withers did nothing.

28. To add insult to injury, on December 27, 2016, Dixie award Ms. Saracini with a $500 bonus and awarded Mr. Coppock with roughly a $15,000 bonus. This was very upsetting to Ms. Saracini as she had always been a high-performing employee with excellent performance

29. Dixie's message was very loud and clear that it did not value Ms. Saracini because she was a woman. Indeed, ignoring her complaints regarding the offensive sexist language, allowing obscene pictures to be displayed in the workspace, and paying Ms. Saracini less than her male counterparts are all evidence of Dixie's discriminatory animus towards women.

30. At the end of December 2016, Ms. Saracini could no longer remain working at Dixie. For over a year, she had been a constant state of anxiety. Dixie's actions caused

5

her to suffer severe anxiety and depression.  Dixie's blatant disregard for Ms. Saracini's physical and mental well-being coupled with its blatant sexism created a perfect storm of intolerable work conditions.  Accordingly, Dixie constructively discharged Ms. Saracini on December 29, 2016.

31. Dixie's actions made Ms. Saracini feel worthless and dehumanized.  On December 30, 2016. Ms. Saracini attempted suicide.

## STATEMENT OF CLAIMS

**COUNT I:   VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 - SEX DISCRIMINATION**

32. Plaintiff herein adopts and incorporates by reference all the allegations set forth in paragraphs 1 through 31 as if originally pleaded herein.

33. 42 U.S.C. § 2000e-2(a) provides that it is an unlawful employment practice for an employer to "(1) discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ... ; or (2) to limit, segregate, or classify his employees .. .in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex".

34. Ms. Saracini is a member of a protected group, that is, women.

35. The defendant, Dixie, by and through the defendants' employees, including but not limited to supervisors, violated Ms. Saracini's rights under Title VII (42 U.S.C. § 2000e, et seq.) by engaging in actions and/or activities constituting sex discrimination against Ms. Saracini, as alleged above.

6

36. These violations by defendant, Dixie, were based upon Ms. Saracini's sex, and affected the terms, conditions, and/or privileges of Ms. Saracini's employment.

37. As a direct and proximate result of the unlawful conduct of defendant, Dixie, Ms. Saracini has suffered, and will in the future suffer, great damages including front pay; back pay; medical expenses; loss of career opportunities, promotions and advancements; loss of retirement benefits; loss of fringe benefits; embarrassment, humiliation, and inconvenience; severe mental anguish, stress, and pain and suffering; loss of enjoyment of life and other nonpecuniary injury in amounts to be determined at trial.

38. In addition, Ms. Saracini has incurred and continues to accrue attorneys' fees and other costs related to the prosecution of this action.

WHEREFORE, plaintiff, Teresa Saracini, prays that this Court enter judgment in her favor and against the defendants, Dixie Sheet Metal Works, Inc., on the above Count, and further:

A. Award on Count I judgment in favor of the plaintiff, Teresa Saracini, and against the defendant, Dixie Sheet Metal Works, Inc., and entry of an order for all relief available under Title VII of the Civil Rights Act of 1964, as amended, including but not limited to front pay, back pay, and interest (pre-judgment and post-judgment) on those amounts, in amounts to be determined at trial; Three Hundred Thousand and No/100 Dollars ($300,000.00), or whatever amount may be proven at trial, for compensatory and punitive damages pursuant to 42 U.S.C. § 1981 a(b)(3); and Ms. Saracini's attorneys' fees and costs in this action, including expert fees, pursuant to 42 U.S.C. § 2000e-5(k);

B. Enter a declaratory judgment that the practices complained of are unlawful and in violation of the plaintiff Ms. Saracini's rights; and

C. Preliminarily and permanently enjoin the defendant, Dixie Sheet Metal Works, Inc., from engaging in such unlawful practices, policies, customs, and usages and from continuing any and all other practices shown to be in violation of applicable law; and

D. Award the plaintiff, Teresa Saracini, any further relief as the Court deems just and equitable under the circumstances.

## JURY DEMAND

Plaintiff requests a trial by a jury of his peers as to all claims set forth in this Complaint.

DATED: July 17, 2018                    Respectfully submitted,


_____
Rosanna C. Lopez
VA Bar No.: 70547
Lopez & Wu, PLLC
1818 Library Street, Suite 500
Reston, Virginia 20190
Telephone: 703-835-6145
Facsimile: 703-831-0181
Email: rlopez@lopezandwu.com
Attorney for Teresa Saracini

8